UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELDON RAY NEWSOME,<br><br>Plaintiff,<br><br>v.<br><br>LOTERZSTAIN, et al.,<br><br>Defendants. | No. 2:19-cv-0307-JAM-EFB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding without counsel in this action brought under 42 U.S.C. § 1983. Plaintiff's motion to proceed in forma pauperis ("IFP") under 28 U.S.C. § 1915 was granted on August 8, 2019. ECF No. 14. Defendants now seek dismissal of the action, arguing that plaintiff's allegation of poverty was false. ECF No. 30. For the reasons that follow, the motion must be denied.

I.     Background

In this district, plaintiffs generally seek IFP status by submitting a form application. E.D. Cal. Website, http://www.caed.uscourts.gov/caednew/index.cfm/forms/civil/ (last checked July 24, 2020). Relevant to this case, the form asks the applicant to list all income from the prior 12 months, any money in a bank account, and any other assets of value. The form concludes with the following declaration, above the applicant's signature: "I declare under penalty of perjury that the above information is true and understand that a false statement may result in a dismissal of my claims."

1

Plaintiff completed and signed this application on February 18, 2019.  ECF No. 2.  He averred that, in the past 12 months, he had not received any money from any source except for $200 from home.  *Id.* at 1.  He further averred that he had no money in any bank account and owned no other valuable property or assets.  *Id.* at 2.

On February 21, 2019, CDCR's trust office submitted plaintiff's trust account statement for the six months preceding the filing of this case.  ECF No. 6.  That statement revealed that, contrary to his representations in his IFP application, plaintiff had received two monetary settlements during that period (or one settlement that posted to the account in two chunks), posting to the account on September 11, 2018.  *Id.*  The first amount, for $2069, was entirely used up to pay a restitution fine and other fees owed by plaintiff.  *Id.*  The second amount was for $4,931.  *Id.*  Over the next several months, plaintiff used this money to purchase unknown items[1], pay phone bills[2], and make substantial withdrawals.  Significantly, on October 31, 2018, plaintiff withdrew $1500 from the trust account.  *Id.*  This withdrawal is labeled "phone and legal" on the trust account statement, but plaintiff has not provided any further information about it.  And, on November 15, 2018, plaintiff withdrew $1000 from the account, which the statement labels as "attorney."  *Id.*  Again, plaintiff has not elaborated on these withdrawals or any of the other expenditures.

Defendants seek judicial notice of documents from other cases in which plaintiff sought IFP status or fee waiver.  That request is granted.  Fed. R. Evid. 201.  The court also grants defendants' request for judicial notice of the inmate trust account statement filed for plaintiff in *Newsome v. Innis-Burton, et al.*, E.D. Cal. Case No. 2:19-cv-01862-JAM-DMC, which reveals

---

[1] Plaintiff paid the following nontrivial sums for "sales" or to Walkenhorst's (a company that sells products to inmates): (1) $101.30 (sales, September 17, 2018), (2) $118.30 (sales, September 17, 2018), (3) $288.79 (Walkenhorst's, October 10, 2018), (4) $114.40 (sales, October 16, 2018), (5) $105.45 (sales, October 22, 2018), (6) $194.45 (sales, November 14, 2018), (7) 71.95 ("SPO withdrawal," November 15, 2018), (8) $92.80 (sales, November 26, 2018), (9) $71.95 (sales, November 27, 2018), (10) $198.75 (sales, December 17, 2018), (11) $219.30 (sales, January 22, 2019), and (11) $127.90 (sales, February 19, 2019).

[2] Plaintiff made three payments of $150 for telephone bills during the six months preceding the filing of this action.

that plaintiff received various payments totaling $810 between April 6, 2019 and August 23, 2019.  ECF No. 30-1 at 97 (showing seven payments ranging from $25 to $220).

## II. The Motion to Dismiss

Defendants seek dismissal of the case with prejudice under 28 U.S.C. § 1915(e)(2)(A), which provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the allegation of poverty is untrue[.]"  The statute was amended in April of 1996; it had previously provided that the court "*may* dismiss the case if the allegation of poverty is untrue[.]"  28 U.S.C. § 1915(e) (1996) (emphasis added).

Section 1915(e)(2)(A) regards procedures to be followed after an individual has applied for, and been granted, permission to proceed IFP under 28 U.S.C. § 1915(a).  Section 1915(a) allows a person to proceed IFP after he submits to the court an affidavit that includes a statement of all of the person's assets and a statement that the person cannot pay the filing fee.  Additionally, a prisoner seeking to proceed IFP must also submit a certified copy of their prison trust account statement for the six months prior to the filing of the complaint.  28 U.S.C. § 1915(a)(2).  An IFP affidavit "is sufficient where it alleges that the affiant cannot pay the court costs and still afford the necessities of life."  *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015) (considering the impact of the filing fee on the budget of the applicant in determining that she should have been granted IFP status).  Where the IFP applicant is a prisoner, however, courts recognize that most necessary life expenses are covered by the government.  *Kennedy v. Huibregtse*, 831 F.3d 441, 443 (7th Cir. 2016) (noting that plaintiff's entire $2000 in assets were available to him to pay for his lawsuit because the prison paid for his food, clothing, shelter, and medical care).

Defendants argue that plaintiff's IFP application was deliberately inaccurate, warranting dismissal under § 1915(e)(2)(A).  Plaintiff acknowledges that he left the settlement amounts out of his IFP application, but states this was merely because he believed "the inquiry was into his present state of finances and not on past income."  ECF No. 33.

/////

This court recently had occasion to discuss § 1915(e)(2)(A):

> Courts have not been totally uniform in their application of § 1915(e)(2)(A), but a close reading of the cases applying the statute reveals consistent considerations guiding the courts' analyses. The U.S. Court of Appeals for the Ninth Circuit provided a starting point in *Escobedo*, 787 F.3d at 1234 n.8, stating that, to dismiss a complaint under § 1915(e)(2)(A), the court must find that the allegation of poverty was not just inaccurate, but made in bad faith. Consistent with that approach, other courts have concluded that, where the allegation of poverty is untrue but there is no showing of bad faith, the court should impose a lesser sanction than outright dismissal with prejudice, for example, revoking IFP and provide a window for the plaintiff to pay the filing fee, or dismissing without prejudice. *Camp v. Oliver*, 798 F.2d 434, 438 (11th Cir. 1986); *Mahone v. Pierce Cnty.*, No. C14-5665 BHS-KLS, 2014 U.S. Dist. LEXIS 170997, at *7-8 (W.D. Wash. Oct. 21, 2014); *Jacobson v. Am. Honda Motor Co.*, No. CV 10-134-PK, 2010 U.S. Dist. LEXIS 80060, at *4-9 (D. Or. April 29, 2010) (recommending dismissal without prejudice where plaintiff failed to disclose income on IFP application but the evidence did not conclusively show intentional misrepresentation).
>
> Courts that have declined to dismiss an action under § 1915(e)(2)(A) have generally based their decisions on the actual poverty of the plaintiff, despite a technical inaccuracy in the IFP application, and the absence of a showing of bad faith. *Escobedo*, 787 F.3d at 1234 n.8 (dismissal not warranted where plaintiff claimed to be paying a certain amount in "rent" despite actually owning her home, because her mortgage payment was equivalent to a payment of rent and plaintiff owned no equity in the home); *Camp*, 798 F.2d at 438-39 (reversing district court's dismissal where there was no finding that plaintiff's inaccuracy foreclosed IFP eligibility); *Hammler v. Alvarez*, No. 18-CV-326-AJB(WVG), 2019 U.S. Dist. LEXIS 22837, at *2-5 (S.D. Cal. Feb. 13, 2019) (dismissal not warranted where plaintiff failed to reveal over $1,000 in settlement funds because such funds were immediately and entirely used to pay plaintiff's restitution fines); *Ruffin v. Baldwin*, No. 18-cv-1774-NJR, 2018 U.S. Dist. LEXIS 203411, at *7-10 (S.D. Ill. Nov. 30, 2018) (dismissal not warranted where plaintiff did not list over $4,000 in settlement funds received in the six months preceding the application because the funds were revealed on the accompanying trust account statement (indicating no intent to conceal them) and because, by the date of the application, plaintiff had spent the money and was thus eligible for IFP); *Griffin v. Moon*, No. 1:12-cv-02034-LJO-BAM (PC), 2016 U.S. Dist. LEXIS 130812, at *7 (E.D. Cal. Sept. 23, 2016) (dismissal not warranted where plaintiff had received funds between 8 and 20 years prior to his IFP application and there was no evidence that he currently had such funds).
>
> On the flip side, courts routinely dismiss with prejudice cases upon finding that the plaintiff has intentionally withheld information that may have disqualified plaintiff from obtaining IFP status or has otherwise manipulated his finances to make it appear that a plaintiff is poorer than he actually is; i.e., where the facts show that the inaccuracy on the IFP application resulted from the plaintiff's bad faith. Thus, in *Kennedy v. Huibregtse*, 831 F.3d 441, 442-44 (7th Cir. 2016), the Seventh Circuit affirmed the district court's dismissal with prejudice of a complaint pursuant to § 1915(e)(2)(A) where the plaintiff failed to reveal that he had a trust account outside of prison, managed by a friend, containing about $1400 at the time of the plaintiff's IFP application. The court rejected plaintiff's claim that he did not know the balance of the account at that time and thought it had only about $10, because he spent over $600 from it just before and after the

application. *Id.* at 444. Importantly, the court found that, even if the district court would have granted the plaintiff IFP status if it had known about the trust account,

> hiding assets is not a permissible alternative to seeking the judge's assistance. An applicant has to tell the truth, then argue to the judge why seemingly adverse facts (such as the trust fund in this case) are not dispositive. A litigant can't say, "I know how the judge *should* rule, so I'm entitled to conceal material information from him."

*Id.* at 443 (emphasis in original).

Similarly, the Seventh Circuit affirmed a dismissal with prejudice under § 1915(e)(2)(A) where the plaintiff had not disclosed a savings account he controlled with a balance of over $32,000 at the time of his IFP application. *David v. Wal-Mart Stores, Inc.*, 669 F. App'x 793 (7th Cir. 2016). The court rejected the plaintiff's explanation that he regarded the account as off-limits because he kept that money for his family in case of financial hardship. *Id.* at 794. The plaintiff had used funds from the account to pay $600 for a seminar and thus his claim that he could not have used the money for the filing fee was disingenuous. *Id.* And, as in *Kennedy*, the court emphasized that the plaintiff must disclose assets to the court and allow the court to assess their availability to him. *Id.* at 794.
The Second Circuit reached the same conclusion in *Vann v. Comm'r of the N.Y.C. Dep't of Corr.*, 496 F. App'x 113 (2d Cir. 2012), affirming dismissal with prejudice where the plaintiff made false statements and intentionally concealed income on his IFP application. *Id.* at 114. Plaintiff had omitted about $2,000 of income from the application. *Id.* at 115-16. The court found irrelevant whether the plaintiff had spent the money before submitting his IFP application, because the statute required him "to accurately and truthfully state his financial history and assets," and he had not done so. *Id.* at 116. Moreover, the plaintiff was "an experienced litigator with extensive knowledge and familiarity with the in forma pauperis system." *Id.* This fact supported a finding of bad faith. *Id.* at 115 ("To determine whether a plaintiff has acted in bad faith a court may consider a plaintiff's familiarity with the in forma pauperis system and history of litigation.")

In a good number of cases finding bad faith, prisoner-plaintiffs have diverted funds in the period leading up to their IFP application to others, usually family members. In *Roberts v. Beard*, No. 15cv1044-WQH-RBM, 2019 U.S. Dist. LEXIS 129744 (S.D. Cal. Aug. 2, 2019), the plaintiff had received a $3,000 settlement on October 21, 2014, transferred $2,000 to his sister on the same day, and used the remainder to pay outstanding court filing fees. *Id.* at *3-12. On April 14, 2015, the plaintiff submitted an IFP application indicating that he had not received any money from any other sources in the prior twelve months. *Id.* When the defendants sought dismissal under § 1915(e)(2)(A), the plaintiff claimed he had forgotten about the $3,000 settlement, had not benefitted from it, and no longer had the money at the time of his application. *Id.* at *10. The court rejected these claims as not credible based on the plaintiff's extensive litigation history and familiarity with the IFP process. *Id.* at *7-11 (quoting *Vann*).

In *Cuoco v. U.S. Bureau of Prisons*, 328 F. Supp. 2d 463 (S.D.N.Y. 2004), the plaintiff sought IFP status on October 27, 1998, despite accepting settlement offers in two other cases totaling $13,500 in the prior three weeks. *Id.* at 464-65. She stated on her IFP application that she had enough money in an account in the community to pay the fee, but could not access the money because prison officials were not allowing her to receive checks. *Id.* at 464. She did not disclose the settlements. While her IFP application was pending, she asked that the settlement

checks be sent to her mother, and they were. *Id.* at 465. At the same time, the plaintiff prohibited prison officials from receiving checks on her behalf. *Id.* She did not disclose to the court that she had herself created the barrier keeping checks out of her prison account. *Id.* at 466. The court found that plaintiff, who had obtained IFP status in 15 other suits, had diverted the funds to her mother's address to perpetuate a negative balance in her prison account while misrepresenting to the court that circumstances beyond her control made it unfeasible to have money deposited there. *Id.* at 468-69. This manipulation of the IFP system, especially in combination with similar conduct by the plaintiff in other cases, justified dismissal of her case with prejudice. *Id.* at 468-69.

In *Richmond v. Housewright*, 101 F.R.D. 758 (D. Nev. 1984), the plaintiff did not reveal $2,100 in income he had received during the 12 months preceding his IFP application for work performed as an inmate law clerk and paid directly to the plaintiff's fiancée. Finding that the plaintiff had "deliberately lied," the court dismissed the case. *Id.* at 759.

*Witkin v. Lee*, No. 2:17-cv-0232-JAM-EFB P, 2020 U.S. Dist. LEXIS 86104, at *6-13 (E.D. Cal. May 15, 2020). "These cases reveal that the essential questions before the court are: (1) was plaintiff's allegation of poverty untrue and, if so, (2) did plaintiff submit the untrue IFP application in bad faith?" *Id.* at 13.

### A. Was plaintiff's allegation of poverty untrue?

Defendants argue that plaintiff's allegation of poverty was untrue because "he falsely claimed that he received almost no income when, in reality, he received a $7,000 settlement, nearly $5,000 of which was available to him just four months before filing this case." ECF No. 30 at 5. Plaintiff does not dispute that he did not disclose this income on his IFP application. While the income is displayed on plaintiff's trust account statement, which correctional officials submitted to the court shortly after the filing of the application, plaintiff's response on the application that "[i]n the past 12 months I have received income from the following sources" was untrue.

Nevertheless, plaintiff had $136.46 in his prison trust account on the day he filed his IFP application. (Plaintiff spent $127.90 that same day, reducing his account to $8.56.) While he failed to disclose the settlement as required by the IFP application form, by the time he filed his case, he was "unable to pay" the filing fee. This is important, because indigent status is assessed at the time the IFP affidavit is filed. 28 U.S.C. § 1915(a)(1) (authorizing in forma pauperis status for persons who attest that they are "unable to pay such fees or give security therefore.");

*Agyeman v. I.N.S.*, 296 F.3d 871, 886 (9th Cir. 2002) ("If the prisoner lacks the means to pay the fee at the time of filing, the PLRA provides for assessment and subsequent collection of the fees as funds become available to him."); *see also Robertson v. French*, 949 F.3d 347, 352 (7th Cir. 2020) ("[T]he PLRA calls only for disclosure of current income that can be used to defray the filing costs."); *Miller v. Hardy*, 497 F. App'x 618, 620-21 (7th Cir. 2012) (poverty for purposes of the IFP statute is measured at the time that the IFP application is filed, even if the plaintiff has been profligate with income in the months preceding filing).

Defendants point out that, after he filed this case, plaintiff began receiving payments into his prison trust account. A trust account statement filed in a subsequent case reveals that plaintiff received $810 between April 6, 2019 and August 23, 2019. ECF No. 30-1 at 97. These payments came in increments of $165, $50, $50, $220, $20, $150, and $150. *Id.* While defendants may imply that plaintiff sent his settlement money to someone outside of the prison, filed for IFP status, and then started receiving the money back, there is nothing to establish this beyond speculation. Plaintiff's IFP application in this case indicated that he sometimes received "200 from home." ECF No. 2. It is equally plausible that plaintiff used his settlement money to pay legitimate expenses and, when it ran out, continued receiving money from home.

The bare facts appear to be that plaintiff received significant settlement income that he did not list on his IFP application, but which was listed on his trust account statement, that he was perhaps profligate with that income in the months after he received it, and that he did not retain enough money to pay the filing fee by the time he filed this case. In two similar cases, courts have concluded that the plaintiffs' profligate spending prior to filing did not present a basis for denying IFP status absent evidence that they had acted willfully to evade the filing fee. *Miller*, 497 F. App'x at 620-21; *Ruffin v. Baldwin*, 2018 U.S. Dist. LEXIS 203411, at *7-10. The court cannot make such a willfully evading finding on the record before it on this motion.

The court finds that these facts are insufficient to show that plaintiff diverted his settlement funds elsewhere in an effort to deceive the court and thereby receive IFP status. While plaintiff may have been able to pay the filing fee if he had acted more prudently with his money or filed the case earlier, at the time he did file, his financial situation satisfied § 1915.

1   Accordingly, while plaintiff's answer to a question on the IFP application regarding his 6-month

2   financial history was untrue, his allegation of poverty was true. *See Lee v. McDonald's Corp.*,

3   231 F.3d 456, 459 (8th Cir. 2000) (holding that the statute "does not mandate that the district

4   court dismiss [a plaintiff's] claim if it finds that certain assertions in his affidavit are untrue;

5   instead, it requires the district court to dismiss the claim if it finds that [the plaintiff] is not

6   sufficiently poor to qualify for in forma pauperis status given the facts that are true").

    B.  Did plaintiff act in bad faith?

8       As noted above, there is minimal evidence that plaintiff manipulated how he received his

9   settlement income in order to deceive the court. This places the case in stark contrast with *Cuoco*

10  and *Witkin*. In both of those cases, the plaintiff had ensured that income intended for them never

11  posted to their inmate trust accounts and was, instead, diverted to a family member outside

12  prison. In that way, the plaintiffs prevented the court from assessing the truth of their current

13  financial situation. By contrast, in *Ruffin* and in the case at hand, the trust account statements

14  revealed settlement amounts that the plaintiffs had failed to include in their applications. In such

15  a situation, the court can make the IFP assessment despite the omission in the application, and

16  there is less indication that the omission was willful. *Ruffin*, 2018 U.S. Dist. LEXIS 203411, at

17  *10.

18      A plaintiff's litigation history may be probative of bad faith, particularly where it shows a

19  pattern of manipulating the IFP process. *Cuoco*, 328 F. Supp. 2d 468-69. Here, defendants

20  present the court with just three prior cases filed by plaintiff in which he sought IFP status or fee

21  waiver, only two if which were filed in federal court (and thus subject to § 1915). The mere fact

22  that plaintiff has sought IFP status in a few earlier cases does not show such a familiarity with the

23  IFP process that the court can conclude that his omission was the result of bad faith on his part,

24  however. And while the court might infer bad faith from some pattern of conduct in earlier cases

25  indicating deception or an attempt to evade disclosure of income, defendants have not presented

26  any evidence of such a pattern of conduct.

27      Accordingly, the court concludes that, while plaintiff failed to disclose past income on his

28  IFP application, his affidavit of poverty was not untrue, nor does the evidence show that the

omission was made in bad faith.  The facts presented do not warrant the extreme sanction of dismissal with prejudice.  *See Franklin v. Murphy*, 745 F.2d 1221, 1223 (9th Cir 1984) ("Dismissal is a harsh penalty and should only be imposed in extreme circumstances.")  For that reason, the court recommends that defendants' motion to dismiss be denied.

### III. Conclusion and Recommendation

For the reasons stated above, it is hereby RECOMMENDED that defendants' June 25, 2020 motion to dismiss (ECF No. 30) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 5, 2020.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE