UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELDON RAY NEWSOME,<br><br>             Plaintiff,<br><br>       v.<br><br>LOTERZSTAIN, *et al.*,<br><br>             Defendants. | Case No. 2:19-cv-00307-DAD-JDP (PC)<br><br>ORDER THAT PLAINTIFF'S MOTIONS TO APPOINT COUNSEL AND TO BE PRESENT AT PRELIMINARY PROCEEDING BE DENIED<br><br>ECF Nos. 75 & 78<br><br>FINDINGS AND RECOMMENDATIONS THAT DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT BE GRANTED AND THAT PLAINTIFF'S MOTIONS FOR INJUNCTIVE RELIEF BE DENIED<br><br>ECF Nos. 61, 65, & 70<br><br>OBJECTIONS DUE WITHIN 14 DAYS |

Plaintiff Sheldon Newsome, a state prisoner proceeding without counsel in this action under 42 U.S.C. § 1983, alleges that defendants Loterzstain and Dirisu violated his First and Eighth Amendment rights by retaliating against him and denying him adequate medical care.[1]

---

[1] The parties' filings are inconsistent with respect to the spelling of defendant Loterzstain—at times, she is referred to as Lotersztain. *See, e.g.*, ECF No. 61-2 at 1. For the sake of consistency, I will spell her name Loterzstain.

1

1  ECF No. 18.  Defendants move for partial summary judgment, arguing that plaintiff failed to
2  exhaust his administrative remedies with respect to both his First Amendment retaliation claim
3  against defendant Dirisu and part of his Eighth Amendment deliberate indifference claim against
4  defendant Loterzstain.  ECF No. 61.  I recommend granting defendants' motion for summary
5  judgment.[2]  Plaintiff has also filed two motions for injunctive relief, ECF Nos. 65 and 70, which I
6  recommend be denied, and a motion to appoint counsel, ECF No. 75, which I will deny.

**First Motion for Injunctive Relief**

To obtain preliminary injunctive relief, a claimant must show that he is likely to succeed on the merits of his case, that he is likely to suffer irreparable harm in the absence of injunctive relief, that the balance of equities tips in his favor, and that the injunction is in the public's interest.  *See Winter v. NRDC*, *Inc.*, 555 U.S. 7, 20 (2008).  The bar is always high, and it is particularly so in this case, where the requested relief impinges on questions of prison administration.  *See Bell v. Wolfish*, 441 U.S. 520, 547 (1970).  Plaintiff's motion does not address the *Winter* factors; instead, plaintiff contends without elaboration that his mail was subjected to tampering and that the facility withheld an unspecified portion of his legal property or "never sent it to ad-seg." ECF No. 65.  He does not identify the missing legal property, how the property relates to this case, or how the alleged withholding has or will cause him irreparable harm.  *See id.*

More fundamentally, because his motion does not identify actions that have been or could be taken by parties to this case, plaintiff has not shown that this court has jurisdiction to order the injunctive relief that he requests.  *See Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court.").  Although courts have a limited authority under 28 U.S.C. § 1651 to issue injunctive relief "where non-party correctional officials are impeding the prisoner-plaintiff's

---

[2] Because I do not identify genuine disputes of material fact, defendants' request for a preliminary hearing, ECF No. 61-2 at 14, and plaintiff's motion to be present at any such hearing, ECF No. 78, are denied as moot.

ability to litigate his pending action," this authority is "'to be used sparingly[,] only in the most critical and exigent circumstances,' and only 'if the legal rights at issue are indisputably clear.'" *Cunningham v. Martinez*, No. 1:19-cv-1508-AWI-EPG (PC), 2021 WL 2549454, at *1 (E.D. Cal. June 22, 2021) (quoting *Brown v. Gilmore*, 533 U.S. 1301, 1303 (2001)). Plaintiff has not met this standard, and so I recommend that his motion for injunctive relief, ECF No. 65, be denied.

## Motion for Appointment of Counsel

Plaintiff has filed a motion asking that counsel be appointed to aid him both in obtaining his lost legal documents and in securing access to the law library. ECF No. 75. Plaintiff does not have a constitutional right to appointed counsel, *see Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), and I lack the authority to require an attorney to represent plaintiff, *see Mallard v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 490 U.S. 296, 298 (1989). I can request the voluntary assistance of counsel, *see* 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel"); *Rand*, 113 F.3d at 1525; however, without a means to compensate counsel, I will seek volunteer counsel only in exceptional circumstances. In determining whether such circumstances exist, "the district court must evaluate both the likelihood of success on the merits [and] the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved." *Id*. (internal quotation marks and citations omitted). As discussed above, plaintiff has neither shown that he is likely to succeed on the merits of his legal property allegations nor identified exceptional circumstances warranting the appointment of counsel. Accordingly, I find that appointment of counsel is not appropriate at this time. ECF No. 75.

## Second Motion for Injunctive Relief

Plaintiff seeks a preliminary injunction ordering his transfer to either the California Health Care Facility ("CHCF") or the California Medical Facility ("CMF") on the grounds that the Richard J. Donovan Correctional Facility ("RJD") cannot provide him with adequate medical care. ECF No. 70. Defendants argue that plaintiff's motion is moot because he "is no longer housed at RJD and is receiving proper treatment for his medical conditions while housed at California State Prison, Sacramento" ("CSP-Sac"). ECF No. 73 at 1. "[W]hen a prisoner is

1  moved from a prison, his action will usually become moot as to conditions at that particular

2  facility." *Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001) (internal citations omitted).  In

3  plaintiff's subsequent motion to appoint counsel, he attests that—since filing his earlier motion

4  for injunctive relief—he has been "relocated from CSP-Sac to CHCF Stockton," ECF No. 75,

5  corroborating defendants' claim that plaintiff is no longer housed at RJD and indicating that he is

6  presently housed at one of his preferred medical facilities.  Thus, I find that plaintiff's motion for

7  injunctive relief is moot, and I recommend that it be denied.

**Motion for Summary Judgment**

A.     **Background**

In his second amended complaint, plaintiff alleges that defendants Loterzstain and Dirisu—a physician and certified nursing assistant at CMF, respectively—retaliated against him by effecting his transfer from the CMF Outpatient Housing Unit ("OHU") to RJD in September 2017.  *See* ECF No. 18 at 3-10.  He alleges that the transfer caused him mental and physical harm and impaired his access to treatment for certain chronic medical conditions.[3]  *Id*. at 6-8.  He further alleges that Loterzstain declined to treat his swollen hands, discontinued his pain medication, discontinued his physical therapy, and removed him from the care of specialists in the University of California San Francisco ("UCSF") neurology department.  *Id.* at 10-11.  The court's screening order found that plaintiff stated a First Amendment retaliation claim against both Dirisu and Loterzstain and an Eighth Amendment claim against Loterzstain.  *See* ECF No. 20 at 3.

Plaintiff filed several grievances before filing suit, but the parties' arguments focus on one: CMF Health Care Grievance tracking number 17000066 ("CMF HC 17000066"), received on September 13, 2017.  *See* ECF No. 61-4 at 199-217; ECF No. 76 at 12-22.  In this grievance, plaintiff complained that, in being transferred or discharged, he was "being shown a form of reprisal by Dr. Loterzstain for filling [sic] 602's on CNA F. Dirisu, and SRN II Croll."  ECF

---

[3] Plaintiff has a "complicated medical history including an Arnold Chiari malformation and syringomyclia," and he describes his symptoms as including pain in his shoulders and neck, difficulty moving and exercising, atrophy of his lower extremities, and swelling in his hands. ECF No. 18 at 10-12.

4

1    No. 61-4 at 203.  He explained that other medical personnel had not told him that he was ready to
2    be discharged, that he had not yet been evaluated by specialists at UCSF, and that he was
3    experiencing swelling and atrophy in his legs.  *Id.* at 205.  More generally, he stated, "I feel that
4    I'm getting worse, but Dr. Loterzstain keeps telling me I'm doing better," and added that he
5    believed the transfer was "impacting [his] physical recovery."  *Id*.  In support of his grievance,
6    plaintiff attached both an earlier grievance that alleged verbal abuse by Dirisu and a letter
7    addressed to the warden in which he objected to the transfer and explained that defendant
8    Loterzstain had removed him from the care of UCSF's neurology department.  *Id.* at 203, 207,
9    211-12.

10   On October 23, 2017, the institutional-level review disposed of CMF HC 17000066 with
11   "[n]o intervention," *id*. at 210, and on February 28, 2018, that disposition was affirmed at the
12   headquarters level, *id*. at 199.  The chief of the Health Care Correspondence and Appeals Branch
13   ("HCCAB") wrote that plaintiff's "health care grievance with attachment(s), health care record,
14   and all pertinent department policies and procedures were reviewed."  *Id*. at 200.  Finding that no
15   intervention was required, the response continued, "[t]hese records indicate that [plaintiff has]
16   been evaluated by the primary care provider to determine [his] medical needs and the type of
17   facility that is best suited for [his] continued health care."  *Id*.

18   The record contains several other potentially relevant documents.  First, plaintiff includes
19   with his opposition a letter that he wrote to Federal Receiver Clark Kelso, dated September 7,
20   2017, complaining that defendant Loterzstain had discontinued both his pain medication and
21   physical therapy and had disregarded instructions given him by UCSF specialists.  *See* ECF
22   No. 76 at 10.  He also includes a form CDCR 1824 Reasonable Accommodation Request CMF-
23   M-17-03070 ("CMF-M-17-03070"), filed on September 7, 2017, in which he objected to the
24   transfer and explained that his "body is too fragile, and subjected to constant swelling, and pain to
25   be housed anywhere else."  *Id.* at 24.  Finally, he includes two CDC 7362 Health Care Services
26   Request Forms, in which he objected to the cancellation of his physical therapy, *id*. at 28 (dated
27   September 6, 2017), and to the change to his pain medication, *id*. at 29 (dated September 8,
28   2017); his filings do not indicate whether these forms were attached to his grievances.

**Legal Standards**

 **A.**  **Summary Judgment**

  A motion for summary judgment will be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see* Fed. R. Civ. P. 56. The moving party bears the burden of establishing that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 322-23. If the moving party meets that burden by "presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial, [Fed. R. Civ. P. 56(e)(2)] shifts to [the nonmoving party] the burden of presenting specific facts showing that such contradiction is possible." *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 950-52 (9th Cir. 1978).

  Each party's position must be supported by (1) citations to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) argument showing that the materials cited do not establish the presence or absence of a genuine factual dispute or that the opposing party cannot produce admissible evidence to support its position. *See* Fed. R. Civ. P. 56(c)(1). The court can consider other materials in the record not cited by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

  The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated there to be no genuine issue of material fact and that judgment is appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*,

6

198 F.3d 1130, 1134 (9th Cir. 2000).

### B. PLRA Exhaustion

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This statutory exhaustion requirement "applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the relief sought by the prisoner or the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001). Unexhausted claims require dismissal. *See Jones v. Bock*, 549 U.S. 199, 211 (2007).

A prison's own grievance process, not the PLRA, determines how detailed a grievance must be to satisfy the PLRA exhaustion requirement. *Id.* at 218. A plaintiff's administrative appeal must "provide enough information . . . to allow prison officials to take appropriate responsive measures." *Griffin v. Arpaio*, 557 F.3d 1117, 1121 (9th Cir. 2009) (quoting *Johnson v. Testman*, 380 F.3d 691, 697 (2nd Cir. 2004)); *see also Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) ("A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress."). The California prison system's grievance regulations "define the boundaries of proper exhaustion." *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009). The regulations at the time of plaintiff's claim required prisoners to list all staff members involved in the event, and to describe their involvement. Cal. Code Regs. tit. 15, § 3087.2(g)(1).[4] But if a prisoner "does not have information to identify involved staff member(s), the grievant shall provide any other available information that may assist in processing the health care grievance." *Id.* at § 3087.2(g)(2).

The PLRA recognizes no exception to the exhaustion requirement, and the court may not recognize a new exception, even in "special circumstances." *Ross v. Blake*, 578 U.S. 632, 648 (2016). The one significant qualifier is that "the remedies must indeed be 'available' to the

---

[4] Cal. Code Regs. tit. 15, chapter 1, article 8.6 (§§ 3087-3087.12) became operative on September 1, 2017—before plaintiff filed the relevant grievance—and it was renumbered without regulatory effect on August 8, 2019, at chapter 2, subchapter 2, article 5 (§§ 3999.225-3999.237).

7

1 prisoner." *Id.* at 1856. The Supreme Court has explained when an administrative procedure is

2 unavailable:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates . . . . Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use . . . . And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation . . . . [S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar.

10 *Id.* at 643-44 (citations omitted); *see also Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir.

11 2017) ("When prison officials improperly fail to process a prisoner's grievance, the prisoner is

12 deemed to have exhausted available administrative remedies."). If the court concludes that

13 plaintiff has failed to exhaust available remedies, the proper remedy is dismissal without

14 prejudice of the portions of the complaint barred by § 1997e(a). *See Jones*, 549 U.S. at 223-24;

15 *Lira v. Herrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

**Discussion**

17 Defendants move for summary judgment, arguing that plaintiff failed to exhaust available

18 administrative remedies for a portion of his allegations. ECF No. 61-2. The screening order

19 found that plaintiff stated potentially cognizable (1) retaliation claims against both defendants

20 Dirisu and Loterzstain and (2) a deliberate indifference claim against defendant Loterzstain,

21 insofar as he effected plaintiff's transfer out of the OHU, removed him from the care of the UCSF

22 neurology department, discontinued his pain medication, failed to treat his swollen hands, and

23 discontinued his physical therapy. ECF No. 20 at 2-3. Defendants acknowledge that plaintiff

24 filed and fully appealed a grievance that complained that defendant Loterzstain both retaliated

25 against him by effecting his transfer from CMF OHU and removing him from the care of the

26 UCSF neurology department. *See* ECF No. 61-2 at 5 (discussing CMF HC 1700066). However,

27 they argue that neither CMF HC 17000066 nor any other grievance provided sufficient notice of

28 plaintiff's allegations (1) that defendant Dirisu acted in retaliation against him or (2) that

8

1 defendant Loterzstain discontinued his pain medication, failed to treat his swollen hands, and
2 discontinued his physical therapy. *Id*. at 10-11.  For the following reasons, I agree with
3 defendants and recommend granting them partial summary judgment.

4       First, defendants argue that CMF HC 17000066 alleges only that *Loterzstain* retaliated
5 because of grievances submitted against Dirisu but does not allege that *Dirisu* personally acted in
6 retaliation.  ECF No. 77 at 4.  Although "[a] grievance need not include legal terminology or legal
7 theories," it must at least provide enough factual detail to "alert[] the prison to the nature of the
8 wrong for which redress is sought." *Griffin*, 557 F.3d at 1120.  In *Griffin*, the prisoner-plaintiff
9 filed a grievance stating that, due to his medical conditions, he had experienced difficulty
10 accessing his top bunk; the plaintiff requested a ladder "as some sort of permanent step." *Id.* at
11 1118.  Although he received an order for a lower bunk assignment, prison staff allegedly
12 disregarded it, forcing him to remain on a top bunk. *Id.* at 1118-19.  The Ninth Circuit held that
13 neither the initial grievance nor his subsequent appeals—which continued to request a ladder—
14 "'provide[d] enough information . . . to allow prison officials to take appropriate responsive
15 measures' . . .[, since t]he officials responding to his grievance reasonably concluded that the
16 nurse's order for a lower bunk assignment solved [his] problem." *Id.* at 1121.

17       In CMF HC 17000066, plaintiff complained that he was "being shown a form of reprisal
18 by Dr. Loterzstain for filling [out] 602's on CNA F. Dirisu, and SRN II Croll." ECF No. 61-4 at
19 203.  Plaintiff's complaint identified his earlier grievance against Dirisu as a precipitating cause
20 of the reprisal, but it identified only Loterzstain as having taken action against him; nowhere does
21 it allege Dirisu's participation. *See id.* at 203-12.  In a letter to the CMF warden that plaintiff
22 attached to his grievance, he stated that "[t]he instigator of this [transfer from OHU housing] was
23 Dr. Lotersztain [sic] . . . ." *Id.* at 211.  Neither this grievance nor any of the filings in the record
24 contain the factual allegations of Dirisu's participation in the retaliation—for instance, that he had
25 a "'wish list' of inmate/patients he wanted out of the [OHU]," ECF No. 18 at 3, that he told
26 plaintiff "I am gonna get Dr. Loterzstain to downgrade your level of care and get you
27 transferred," *id.* at 3-4, or that he and Loterzstain verbally abused plaintiff in Loterzstain's office,
28

9

*id.* at 4. CMF HC 17000066 therefore did not provide sufficient notice to prison administrators of plaintiff's claim that Dirisu participated in the alleged retaliation.

Second, defendants argue that plaintiff failed to exhaust his administrative remedies with respect to a portion of his Eighth Amendment allegations against defendant Loterzstain. ECF No. 61-2 at 1-2. They do not dispute that CMF HC 17000066 exhausted his allegations that Loterzstain transferred him from CMF OHU and removed him from the care of the UCSF neurology department, but they argue that his grievance failed to provide notice that she refused to treat his swollen hands and discontinued both his pain medication and his physical therapy. *Id.* at 1 & 5. This argument is similarly persuasive.

Although CMF HC 1700066 mentioned that plaintiff "[hadn't] been evaluated by UCSF" and indicated that Loterzstain's decision to transfer him was premature and inconsistent with sound medical judgment, it said nothing about her alleged refusal to treat his swollen hands or her alleged denial of both pain medication and physical therapy. ECF No. 61-4 at 203-205. The closest it comes to discussing any of these harms was a brief mention that plaintiff had been experiencing swelling and atrophy *in his legs*. *See id.* at 205. The institutional-level response to this grievance identified two issues: (1) "Requesting to remain in C.M.F G-3 OHU" and (2) "Requesting not be threatened or reprised against for appealing what is wrong." *Id.* at 209. Nowhere in HCCAB's response do they address the treatment for plaintiff's hands or the denial of his pain medication and physical therapy.

In his supplemental opposition, plaintiff contends that his additional filings—his letter to Clark Kelso, his reasonable accommodation request CMF-M-17-03070, and his CDC 7362 health care request forms—supply the more-particularized notice to prison administrators required to exhaust these additional claims. *See* ECF No. 80. Defendants contend that these filings were neither formal health care grievances nor properly submitted as attachments to a fully appealed health care grievance. ECF No. 77 at 3-4. Plaintiff disputes these characterizations, claiming that

1   the documents were properly attached to one or more of his grievances and that the letter to Clark
2   Kelso was forwarded to HCCAB for review. *See* ECF No. 80 at 2-4.[5]

3           As an initial matter, there is no dispute that these documents are not formal health care
4   grievances and are not independently sufficient to exhaust plaintiff's remedies. The California
5   prison system's grievance regulations "define the boundaries of proper exhaustion," *Marella*,
6   1027, and neither informal letters nor other request forms satisfy the requirement that prisoners
7   use a "CDCR 602 HC to describe the specific complaint that relates to their health care." Cal.
8   Code Regs. tit. 15, § 3087.2(a) (renumbered at § 3999.277(a)); *see Wilson v. Wann*, No. CIV S-
9   06-1629 GEB KJM P, 2008 WL 4166886, *2 (E.D. Cal. Sept. 8, 2008) (holding that letters to the
10  warden and internal affairs do not exhaust administrative remedies under analogous regulations).

11          Although the parties' dispute whether the attachments were properly included with
12  plaintiff's grievances, that disagreement should not drive the court's evaluation of defendants'
13  motion for partial summary judgment. A grievance package can include only "supporting
14  documents necessary for the clarification and/or resolution of the issue(s)" described in the
15  grievance itself. Cal. Code Regs. tit. 15, § 3087.2(j) (renumbered at § 3999.277(j)); *see* § 3087
16  ("Supporting documents do not include documents that . . . introduce new issues not identified in
17  the current health care grievance."). Attachments will not result in an exhaustion of remedies
18  with respect to an issue not identified in the grievance itself. *See Dixon v. LaRosa*, No. 2:10-CV-
19  1441-GEB-KJN, 2011 WL 3875806, at *7 (E.D. Cal. Aug. 31, 2011) (holding that supplemental
20  declaration with additional claims did not provide proper notice since analogous general
21  grievance regulations "only permit[] the attachment of supporting documents which are
22  'necessary to clarify the appeal'"). Here, since neither of the grievances say anything about
23  Loterzstain's failure to treat his hands or her discontinuation of his pain medications or physical
24  therapy, *see* ECF No. 61-4 at 183-86, 203-205, the allegedly attached documents are insufficient

---

[5] Plaintiff also references RJD HC 17000230, which alleged that he had been wrongly transferred and requested to return to an OHU setting, and which was denied at the headquarters level as "a duplicate issue to that in . . . CMF HC 17000066." ECF No. 61-4 at 182-88; *See* ECF No. 80 at 4 (claiming that plaintiff properly attached the CDCR 1824 reasonable accommodation request to RJD HC 17000230).

to preserve any claims related to these issues.

Accordingly, I find that defendants have met their burden of showing that plaintiff failed to exhaust his administrative remedies before filing suit, and I recommend that their motion for partial summary judgment be granted. I recommend the dismissal of plaintiff's retaliation claim against Dirisu and the parts of his deliberate indifference claim against Loterzstain stemming from his allegations that she denied him treatment for his hands, discontinued his pain medication, and discontinued his physical therapy. If these recommendations are adopted, the case will proceed on plaintiff's claims against Loterzstain for retaliation and for deliberate indifference related to the transfer from CMF OHU and the deprivation of his access to UCSF specialists.

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion to appoint counsel, ECF No. 75, be denied; and

2. plaintiff's motion to be present at a possible preliminary proceeding, ECF No. 78, be denied.

Further, it is hereby RECOMMENDED that:

1. Defendants' motion for partial summary judgment, ECF No. 61, be granted;

2. defendant Dirisu be dismissed from the case;

3. plaintiff's motion for injunctive relief, ECF No. 65, be denied; and

4. plaintiff's second motion for injunctive relief, ECF No. 70, be denied.

I submit these findings and recommendations to the district judge under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days of the service of the findings and recommendations, any party may file written objections to the findings and recommendations with the court and serve a copy on all parties. That document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated:   August 25, 2022

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE